IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHAN OCTAVE on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KC INSTALLATION, LLC doing business as KCI TELECOMMUNICATIONS,<br><br>Defendant. | ) | 1:26-CV-244 |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The plaintiff, Stephan[1] Octave, received a notice from the defendant KC Installation, LLC ("KCI"), that his name and social security number were exposed in a data breach. Thereafter, Mr. Octave spent time and effort to mitigate the risk of the data breach, he received an increase in spam texts and calls, and he was locked out of his CashApp account. KCI moves to dismiss for lack of subject matter jurisdiction.[2] Doc. 7. Because Mr. Octave has not alleged a concrete injury fairly traceable to the data breach, he lacks standing to sue. KCI's motion to dismiss will be granted.

---

[1] The complaint and the parties' briefs use this spelling of Mr. Octave's first name, but the case caption on the Court's docket spells it "Stephen." The Court will direct the Clerk to correct the spelling on the docket.

[2] KCI also moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Because the Court concludes that Mr. Octave lacks standing, the Court does not reach dismissal for failure to state a claim.

## I. Alleged Facts

Mr. Octave resides in High Point, North Carolina, and is a contractor who regularly works on data and computer systems through a third-party contracting service. Doc. 1 at ¶¶ 10–11. KCI is an engineering and professional services company based in Harrisburg, North Carolina. *Id.* at ¶ 3.

On February 25, 2026, KCI sent Mr. Octave a notice telling him of a data breach and that his name and social security number were exposed due to the data breach, on or around August 22, 2025. *Id.* at ¶¶ 10, 24–25; *see* Doc. 1-1 at 2. Plaintiff does not know how KCI got his personally identifying information (PII), but suspects that he might have worked for a KCI subcontractor or other affiliate who passed his PII on to KCI. *Id.* at ¶ 11. He alleges on information and belief that an identified "ransomware group" claimed responsibility for the data breach. *Id.* at ¶ 29.

After the data breach, Mr. Octave spent "time and effort addressing and attempting to mitigate further harm and injury resulting from the Data Breach." *Id.* at ¶ 12; *see id.* at ¶ 57. Mr. Octave alleges that "[a]s a result of the Data Breach, Plaintiff's Social Security number was compromised; he also experienced fraudulent activities in relation to his financial accounts, such as CashApp." *Id.* at ¶ 12; *see id.* at ¶¶ 58, 60. "The latter led to him losing access to his CashApp account, which contained about $60 at the time Plaintiff lost access to it." *Id.* at ¶ 12.

Mr. Octave also experienced an increase in spam texts and calls. *Id.* at ¶ 58. He alleges that he has "suffered emotionally over the stress resulting from the Data Breach and his substantially increased risk of identity theft." *Id.* at ¶ 13; *see id.* at ¶ 59.

## II. Standard of Review

In a facial challenge to subject matter jurisdiction, as here, the defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). For this type of 12(b)(1) challenge, the plaintiff has the same procedural protections he would receive under a Rule 12(b)(6) motion to dismiss. *Id.*; *see Atkinson v. Credit Acc. Corp. Primeritus Fin. Servs. Inc.*, No. 22-CV-369, 2023 WL 2429527, at *1 (M.D.N.C. Mar. 9, 2023). District courts should construe facts alleged in the complaint and the record documents referenced and incorporated in the complaint "in the light most favorable to the plaintiff and draw all reasonable inferences in his favor." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 169 (4th Cir. 2016) (cleaned up).

## III. Standing Principles

Standing under Article III has three elements: a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Here, KCI challenges certain components of the first two elements of standing. Doc. 8 at 3–5; Doc. 13 at 1–5, 11.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (cleaned up). A

concrete injury, as most pertinent here, is one that is "real, and not abstract." *TransUnion*, 594 U.S. at 424.

"An injury-in-fact must be concrete in both a qualitative and temporal sense." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018) (cleaned up). "The complainant must allege an injury to himself that is distinct and palpable." *Id.* (cleaned up). "Some harms are unquestionably concrete. The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 421 (4th Cir. 2025) (cleaned up). "Intangible harms are not so straightforward. To be sufficiently concrete, an intangible harm must bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (cleaned up).

In the data breach context, the Fourth Circuit has recognized different paths to establishing a concrete injury: 1) public "dissemination" of private information, *id.* at 427; 2) "actual harm" from fraudulent misuse, *Hutton*, 892 F.3d at 622; 3) and "risk of future misuse" that is "imminent," *Holmes*, 156 F.4th at 429. For example, in *Holmes*, two plaintiffs sufficiently alleged injury by dissemination because they "found their driver's license numbers on the dark web." *Id.* at 420. In *Hutton*, the plaintiffs sufficiently alleged injury from fraudulent misuse because "fraudsters used—and attempted to use—the Plaintiffs' personal information to open Chase Amazon Visa credit card accounts." 892 F.3d at 622. By contrast, in *Holmes*, the two plaintiffs did not sufficiently allege injury based on the "risk that their driver's license numbers may be

misused in the future" merely because others in the same data breach had found their information on the dark web. 156 F.4th at 428.

Finally, to establish the traceability element of standing, "a plaintiff must show . . . that the injury was likely caused by the defendant." *Id.* at 420 (cleaned up). "Standing's traceability prong demands that a plaintiff's alleged injury be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Rouse v. Fader*, 171 F.4th 272, 280 (4th Cir. 2026) (cleaned up).

## IV. Application

In his complaint, Mr. Octave identifies three kinds of injury: 1) his "Social Security number was compromised," 2) he was locked out of his CashApp account and received spam, and 3) he has spent "time and effort" and "suffered emotionally." Doc. 1 ¶¶ 12–13, 56–60. The Court will address each in turn.

### A. Compromised Social Security Number

Mr. Octave's allegation that his "Social Security number was compromised" does not give rise to a plausible inference of concrete injury. *Id.* at ¶ 12; *see id.* at ¶ 60. As recognized in *Holmes*, the mere fact that a data breach occurred exposing PII, or that a third party came into possession of the PII, is not sufficient. 156 F.4th at 425–27. In that case, for example, the court noted the plaintiffs' allegations that "the hackers possess their driver's license numbers," and the court recognized that both drivers license numbers and Social Security numbers, are "equally capable of dealing damage when misused by the wrong party." *Id.* at 425, 427 n. 15. But the court required more specific allegations

about public dissemination, fraudulent misuse, or sufficient risk of future misuse to meet the requirements of standing. 156 F.4th at 425–26, 428–29.

Here, Mr. Octave's allegations are similar to those held inadequate in *Holmes*. He alleges only that third parties have possession of his social security number, but he does not allege any dissemination, specific fraudulent misuse, or facts tending to show a risk of future misuse.

Mr. Octave contends that he has sufficiently alleged "actual misuse" of his PII because he alleged his social security number was compromised. Doc. 12 at 5, 6. But that general allegation is not sufficient. In *Hutton*, a case on which he relies, the plaintiffs alleged different and more specific facts making actual misuse plausible; one plaintiff "received an unsolicited Chase Amazon Visa credit card that was applied for using her social security number and her maiden name (the name that she had provided to the [defendant] in 1998)." 892 F.3d at 622. This specific activity and connection to the data breach provided a basis for both concrete injury and traceability. No similar facts are alleged here.

Mr. Octave also relies on *Midkiff v. Shoe Show, Inc.*, No. 1:24-CV-858, 2026 WL 880210 (M.D.N.C. Mar. 30, 2026), to support his contention that he has sufficiently alleged actual misuse of PII to establish standing. Doc. 12 at 7. But, *Midkiff* is distinguishable. There, three specific instances of misuse of PII provided a plausible basis for inferring a concrete injury: 1) when the plaintiff "attempted to sign up for credit monitoring following notification of the breach, she was unable to because she was told her credit had been locked due to suspicious activity," 2) "an unknown third party hacked

[the plaintiff's] Gmail account and used it to send emails," 3) and when she regained control of her email account, "she experienced an increase of spam and phishing emails, some of which were graphic or offensive." 2026 WL 880210, at *7. These allegations that her "credit had been locked," a third party had actually used her account "to send emails," followed by "spam and phishing emails," set *Midkiff* apart from the present case. *Id.* Moreover, in *Midkiff*, the plaintiff alleged that the data breach had exposed her email address "and financial account information," *id.* at *9, providing additional grounds for traceability not present here. *Cf.* Doc. 1 at ¶ 10.

**B. Fraudulent Activities in Financial Accounts and Increased Spam**

Mr. Octave's second alleged category of harm falters most on the traceability element of standing. The Court accepts for purposes of the present motion that it is a concrete injury to lose access to a "CashApp account, which contained about $60," as a result of fraudulent activities, as Mr. Octave alleges here. *Id.* at ¶ 12; *see Holmes*, 156 F.4th at 421 (noting "monetary harms" are among the most obvious types of concrete injuries) (cleaned up).[3] But Mr. Octave does not allege sufficient facts to trace that injury to the data breach.

There is no alleged link, for example, between his Social Security number taken in the data breach and the loss of access to his CashApp account. *See, e.g.*, Doc. 1 ¶¶ 12, 58. "This straightforwardly defeats [the plaintiff's] attempt to attribute his [adverse

---

[3] It is not clear from the complaint whether Mr. Octave actually lost the $60 that was in his CashApp account, or whether he only "lost access to" it for some time, Doc. 1 at ¶ 58, and the difference may impact the concreteness of the injury. For purposes of this motion, the Court presumes the former.

incident] to the data breach." *Holmes*, 156 F.4th at 420 n. 3. And the general assertion that one was due to the other is not enough to show "the injury was likely caused by the defendant." *Id.* at 420; *see, e.g. Burger v. Healthcare Mgmt. Sols., LLC*, No. 23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) (holding the plaintiff did not sufficiently tie unauthorized charges on credit card to data breach absent allegation that "credit card information itself was disclosed").

Mr. Octave's allegations about an increase in spam calls and texts suffer from the same defects as his CashApp allegations. Courts have had mixed opinions on whether spam calls and texts are sufficiently concrete to constitute an injury in fact. *See, e.g., Holmes*, 156 F.4th at 420 n.3; *Burger*, 2024 WL 473735, at *6. Even assuming they are, Mr. Octave has not alleged facts giving rise to a plausible inference that any spam calls and texts he received are fairly traceable to the data breach. As in *Holmes*, Mr. Octave does "not allege that the compromised information in this Data Breach included cell phone numbers." 156 F.4th at 420 n.3. Without more, it is not plausible to "attribute his uptick in spam . . . calls to the data breach." *Id.*

Mr. Octave contends his CashApp account lockout is analogous to injuries involving CashApp accounts in *Gordon v. Zeroed-In Tech., LLC*, No. CV 23-3284, 2025 WL 936415, at *5 (D. Md. Mar. 26, 2025). Doc. 12 at 5, 7. But *Gordon* is distinguishable. There, "cybercriminals accessed and acquired" in a data breach "individual names, dates of birth, and Social Security numbers" of current or former employees of Dollar Tree. 2025 WL 936415, at *2 (cleaned up). The court held that "actual misuse" of this PII could be inferred based on allegations about specific incidents

involving 23 of 25 individually named plaintiffs, all of whom were current or former employees of Dollar Tree subject of the data breach. *Id.* at *1, *4. The reference to CashApp for two of these plaintiffs was accompanied by additional allegations of dissemination and identify theft. *Id.* at *5.

These allegations are materially different from the present case because Mr. Octave does not allege theft of a debit card, that the theft prompted a CashApp cancellation, or that his PII was "found on the dark web." *Id.* Nor does Mr. Octave allege identity theft or such an attempt by a "fraudster" to "take money from his bank account using another CashApp account." *Id.* Specific acts of this nature are critical to a claim of concrete injury. *See, e.g.*, *Holmes*, 156 F.4th at 425, 430 (distinguishing plaintiffs who "found their [PII] listed on the dark web" and those who did not, and "victims of identity theft" from those only risking identity theft).

*Gordon* is also distinguishable because dozens of plaintiffs involved in the same data breach had experienced actual misuse of their PII, specifically alleged in the complaint. 2025 WL 936415, at *5. Here, Mr. Octave is the only named plaintiff, and he does not allege misuse of PII in this same specific manner for putative class members. Rather, his allegations of misuse are general and generic. *See, e.g.*, Doc. 1 at ¶¶ 61, 92, 103, 112, 121.[4]

---

[4] Mr. Octave cites several additional district court cases determining that plaintiffs sufficiently alleged standing. Doc. 12 at 8–9; *e.g., Capiau v. Ascendum Mach., Inc.*, No. 3:24-CV-142, 2024 WL 3747191, at *4 (W.D.N.C. Aug. 9, 2024); *Solomon v. ECL Grp., LLC*, No. 22-CV-526, 2023 WL 1359662, at *4 (M.D.N.C. Jan. 31, 2023); *McCreary v. Filters Fast LLC*, No. 3:20-CV-595, 2021 WL 3044228, at *6 (W.D.N.C. July 19, 2021). These cases also are distinguishable because each had additional specific allegations of misuse not present here. And,

### C. Time/Effort and Emotional Distress

Time spent and emotional distress "do not suffice for standing on their own." *Holmes*, 156 F.4th at 435. When "future harm is merely speculative, a plaintiff cannot backdoor standing simply by making an expenditure based on a nonparanoid fear." *Id.* at 434 (cleaned up). "[P]laintiffs cannot circumvent their burden to show substantial risk by tacking on a claim for mitigation costs," or "mitigation time." *Id*. The same is true for emotional distress, which "must be attached to a separate injury" that is concrete. *Id.* at 435.

Here, Mr. Octave has not alleged sufficiently concrete injury in the form of time and effort spent "monitoring his accounts for fraudulent activity," and suffering "emotionally over the stress resulting from the data breach and [the] substantially increased risk of identity theft." Doc. 1 at ¶¶ 57, 59. As in *Holmes*, Mr. Octave has not alleged the requisite "separate imminent injury" that is concrete. *Holmes*, 156 F.4th at 433. For the reasons stated, *supra*, a "compromised Social Security number" is not sufficient to show the requisite substantial risk to pair with intangible harms of mitigation and emotional distress. Doc. 1 at ¶ 58.

Mr. Octave does not contend that his allegations about his time and emotional distress are sufficient by themselves to show standing. Rather, he contends that they should be considered as adding to his allegations of misuse and fraudulent activity to

---

to the extent they credit general or generic allegations of risk of future misuse, they are not consistent with the Fourth Circuit's opinion in *Holmes*. *See, e.g.*, 156 F.4th at 429 (holding that an alleged "risk of dissemination to third parties" was "too speculative" to establish an imminent injury "because the plaintiffs had given no reason to think it would occur").

cumulatively provide a basis for standing. Doc. 12 at 9. That may be appropriate when there are adequate allegations of misuse or fraudulent activity, but here, as explained *supra*, there are not.

## V. Conclusion

Mr. Octave has not sufficiently alleged a concrete injury fairly traceable to the data breach. He lacks standing to sue, and KCI's motion to dismiss will be granted.

It is **ORDERED** that:

1. The defendant's motion to dismiss, Doc. 7, is **GRANTED**.
2. The plaintiff's action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, under Rule 12(b)(1).
3. The Clerk **SHALL** change the spelling of the plaintiff's first name on the docket from "Stephen" to "Stephan."
4. Judgment will be entered separately as time permits.

This the 25th day of September, 2026.

UNITED STATES DISTRICT JUDGE